UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

HENRY H. BERTSCH,                  :
        Plaintiff,                 :
                                   :
    v.                             :    CA 07-421 ML
                                   :
MICHAEL J. ASTRUE,                 :
Commissioner,                      :
Social Security Administration,    :
        Defendant.                 :

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

This matter is before the Court on the request of Plaintiff Henry H. Bertsch ("Plaintiff" or "Mr. Bertsch") for judicial review of the decision of the Commissioner of Social Security ("the Commissioner"), denying Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), under §§ 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3) ("the Act"). Plaintiff has filed a motion to reverse the Commissioner's decision. Defendant Michael J. Astrue ("Defendant") has filed a motion for an order affirming the decision of the Commissioner.

The matter has been referred to this Magistrate Judge for preliminary review, findings, and recommended disposition. See 28 U.S.C. § 636(b)(1)(B). For the reasons set forth herein, I find that the Commissioner's decision that Plaintiff is not disabled is supported by substantial evidence in the record and is legally correct. Accordingly, based on the following analysis, I recommend that Defendant's Motion for Order Affirming the Decision of the Commissioner (Document ("Doc.") #12) ("Motion to Affirm") be granted and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Doc. #11) ("Motion to Reverse") be denied.

**Facts and Travel**

Plaintiff was born in 1960, (R. at 80), and he was forty-six years old at the time of the hearing before the Administrative Law Judge ("ALJ"), (R. at 34).  He has past relevant work as a caster in the jewelry industry.  (R. at 55, 108)

On October 25, 2004, Plaintiff filed applications for DIB and SSI, alleging disability since January 1, 1974,[1] due to a pulmonary impairment, diabetes, a back condition, mild obesity, and bipolar disorder.  (R. at 12, 80-82, 97, 101)  The applications were denied initially and on reconsideration, (R. at 12, 60-61, 64, 67, 71), and a timely request for a hearing by an ALJ was filed, (R. at 12, 74).  Plaintiff appeared with counsel and testified at a hearing held on January 16, 2007.  (R. at 34-54)  A vocational expert ("VE") also testified.  (R. at 54-59)  In a March 22, 2007, decision the ALJ found that Plaintiff was not disabled within the meaning of the Act and, therefore, not entitled to a period of DIB or SSI.  (R. at 12-24)  Plaintiff requested review by the Appeals Council, (R. at 7), which on September 28, 2007, denied his request, (R. at 4-6), thereby rendering the ALJ's opinion the final decision of the Commissioner, (R. at 4).  Thereafter, Plaintiff filed this action for judicial review.

**Issue**

The issue for determination is whether substantial evidence supports the Commissioner's decision that Plaintiff is not disabled within the meaning of the Act.

**Standard of Review**

_____

[1] Plaintiff would have been thirteen years old on January 1, 1974.  Although Plaintiff's counsel indicated at the hearing before the Administrative Law Judge ("ALJ") that Plaintiff wanted to change the alleged onset date, (R. at 39), there is no indication in the record that this was done.  The ALJ found that Plaintiff became insured as of April 1, 1979.  (R. at 12)

The Court's role in reviewing the Commissioner's decision is limited. Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999). Although questions of law are reviewed *de novo*, the Commissioner's findings of fact, if supported by substantial evidence in the record,[2] are conclusive. Id. (citing 42 U.S.C. § 405(g)). The determination of substantiality is based upon an evaluation of the record as a whole. Id. (citing Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)("We must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.")(second alteration in original)). The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)). "Indeed, the resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)(citing Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426 (1971))).

### Law

To qualify for DIB, a claimant must meet certain insured status requirements, be younger than 65 years of age, file an application for benefits, and be under a disability as defined by the Act. See 42 U.S.C. § 423(a). An individual is eligible to receive SSI if he is aged, blind, or disabled and meets certain

---

[2] The Supreme Court has defined substantial evidence as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217 (1938)); see also Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999)(quoting Richardson v. Perales).

income requirements.   See 42 U.S.C. § 1382(a).

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."   42 U.S.C. 423(d)(1)(A).   A claimant's impairment must be of such severity that he is unable to perform his previous work or any other kind of substantial gainful employment which exists in the national economy.   See 42 U.S.C. § 423(d)(2)(A).   "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities."[3]   20 C.F.R. §§ 404.1521(a), 416.921(a)(2008).[4]   A claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence. See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986); 20 C.F.R. § 404.1528(a) (2008)("Your statements alone are not enough to establish that there is a physical or

---

[3] The regulations describe "basic work activities" as "the abilities and aptitudes necessary to do most jobs."   20 C.F.R. §§ 404.1521(b), 416.921(b) (2007).   Examples of these include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.

Id.

[4] The Social Security Administration ("SSA") has promulgated identical sets of regulations governing eligibility for DIB and Supplemental Security Income "SSI").   See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 n.1 (1st Cir. 1986).   For simplicity, the Court hereafter will cite only to one set of regulations.   See id.

4

mental impairment.").

The Social Security regulations prescribe a five-step inquiry for use in determining whether a claimant is disabled. See 20 C.F.R. § 404.1520(a) (2008); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001). Pursuant to that scheme, the Commissioner must determine sequentially: (1) whether the claimant is presently engaged in substantial gainful work activity; (2) whether he has a severe impairment; (3) whether his impairment meets or equals one of the Commissioner's listed impairments; (4) whether he is able to perform his past relevant work; and (5) whether he remains capable of performing any work within the economy. See 20 C.F.R. § 404.1520(b)-(g). The evaluation may be terminated at any step. See Seavey, 276 F.3d at 4. "The applicant has the burden of production and proof at the first four steps of the process. If the applicant has met his or her burden at the first four steps, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform." Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

### ALJ's Decision

Following the familiar sequential analysis, the ALJ in the instant case made the following findings: that Plaintiff first met the disability insured status requirements as of April 1, 1979, and has continued to meet them through December 31, 2004, his date last insured, (R. at 14); that Plaintiff had engaged in substantial gainful activity prior to January 31, 1979, and was not disabled prior to that date, (R. at 15); that the reconsideration determination dated January 16, 2004, operated as res judicata and collateral estoppel to establish that Plaintiff

was not disabled for the period through that date,[5] and thus, the
remaining issue to be resolved was whether Plaintiff has been
disabled subsequent to January 16, 2004, (R. at 15); that
Plaintiff had not engaged in substantial gainful activity since
January 17, 2004, (R. at 16); that since January 17, 2004,
Plaintiff's chronic obstructive pulmonary disease ("COPD"),
diabetes, mild obesity, back impairment, and bipolar disorder had
significantly affected his ability to engage in basic work
related activities and thus, constituted severe impairments,
(id.); that since January 17, 2004, Plaintiff had not had an
impairment or combination of impairments that met or medically
equaled a listed impairment, (R. at 17); that Plaintiff retained
the residual functional capacity ("RFC") for a wide range of
sedentary work which did not involve pulmonary irritants and
exposures to extremes of temperature and humidity, and which
could be performed with a moderate impairment of his ability to
maintain attention/concentration and of his ability to maintain
attention/concentration and of his ability to deal appropriately
with the public, co-workers, and supervisors, (R. at 18); that
Plaintiff's statements regarding his impairments and their impact
on his ability to work were not sufficiently credible to persuade
the ALJ that Plaintiff was incapable of performing work within
the RFC stated above, (R. at 20); that since January 17, 2004,
Plaintiff had been unable to perform any of his past relevant
work, (R. at 22); that, given Plaintiff's age, education, work
experience, and RFC, there were jobs that existed in significant

---

[5] Plaintiff had filed a previous Title II application for a
period of disability and disability insurance benefits, alleging that
he had been disabled since January 31, 1999, as a result of a
pulmonary impairment, diabetes, a back condition, mild obesity, and
bipolar disorder. (R. at 12)  That application was denied in initial
and reconsideration determinations dated August 20, 2003, and January
16, 2004, respectively.  There is no indication in the record of
further appeal.  (Id.)

numbers in the national economy which Plaintiff was capable of performing, (id.); and that, therefore, Plaintiff had not been under a disability, as defined in the Act, at any time from January 1, 1974, through the date of the ALJ's decision, including since January 17, 2004, (R. at 24).

## Errors Claimed

Plaintiff alleges that the ALJ did not properly consider Plaintiff's fatigue in assessing his RFC. See Plaintiff's Memorandum in Support of His Motion to Reverse the Decision of the Commissioner ("Plaintiff's Mem.") at 10. In support of this contention, Plaintiff makes three arguments. First, Plaintiff asserts that the ALJ erred in failing to find Plaintiff's sleep apnea to be a severe impairment. See id. at 10-11. Second, Plaintiff contends that the ALJ's findings regarding Plaintiff's fatigue were not supported by any medical source who had seen all of the medical records. See id. at 10-12. Third, Plaintiff alleges that the ALJ failed to evaluate properly Plaintiff's subjective complaints as required by SSR 96-7p and Avery v. Secretary of Health and Human Services, 797 F.2d 19 (1st Cir. 1986). See id. at 10, 12-13.

## Discussion

**I. Substantial evidence supports the ALJ's severity determination.**

Plaintiff has the burden to establish the existence of an impairment by objective medical evidence and to establish that any medically determined impairment is severe. 20 C.F.R. §§ 404.1508, 404.1512 (2008). A severe impairment is one which significantly limits an individual's ability to do basic work activities. 20 C.F.R. § 404.1520(c) (2008); McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1122 (1st Cir. 1986) (finding Secretary's requirement that claimant "make a reasonable threshold showing that the impairment is one which could

7

conceivably keep him or her from working" to be consistent with
the "severity" requirement of 42 U.S.C. § 423(d)(2)(A)).
Nevertheless, "a finding of 'non-severe' is only to be made where
'medical evidence establishes only a slight abnormality or
combination of slight abnormalities which would have no more than
a minimal effect on an individual's ability to work even if the
individual's age, education, or work experience were specifically
considered ....'"   Id. at 1124 (quoting SSR 85-28, available at
1985 WL 56856 at *3).

The ALJ explained why he did not find Plaintiff's sleep
apnea to be a severe impairment:

> While the claimant has been evaluated for sleep apnea
> with a November 2004 study which did not result in a
> diagnosis, and a study in May 2005 consistent with sleep
> apnea for which ... it was recommended that he use a
> CPAP[6] device, the claimant did not emphasize at the
> hearing, nor does the record establish, that this
> impairment has imposed more than minimal impairment of
> ... his ability to engage in basic work related
> activities[,]   It is found to have been non-severe **for
> the period under adjudication**. [R. at 230[7]] and [R. at
> 353](20 C.F.R. 4040.1521 and 416,921 and SSR's 85-28 and
> 96-3p).

(R. at 16 n.6)(bold added).

The Court notes initially that Plaintiff was only insured
through December 31, 2004, and that the medical evidence prior to
that date does not establish that Plaintiff had this condition.
Indeed, John S. Vitelli, M.D. ("Dr. Vitelli"), who performed a
consultative examination of Plaintiff on April 7, 2005, found
that Plaintiff "certainly does not have any sleep apnea, at least

---

[6] CPAP means Continuous Positive Airway Pressure.

[7] The ALJ cited here to Exhibit 2F-70 which is a progress note,
(R. at 230), for the November 14, 2004, sleep study.  The conclusion
that this "study was not diagnostic of sleep apnea[,]" (R. at 233),
appears three pages later, (id.).

by the studies done here."  (R. at 275)

Plaintiff argues that Dr. Vitelli gave this opinion before the sleep apnea was diagnosed in May 2005 and suggests that the doctor's assessment that Plaintiff "should have no significant problems with sitting or standing, but would have some difficulties with walking, lifting, carrying or handling objects," (R. at 275), should be disregarded.  See Plaintiff's Mem. at 11.  Plaintiff also posits that the state agency physicians who gave their opinions in June 2005 and October 2005, (R. at 280-87, 375-76), appear not to have considered sleep apnea in arriving at their assessments.  See Plaintiff's Mem. at 11. As support for this contention, Plaintiff asserts that there is no mention of sleep apnea or any sleep disorder in their assessments.  See id.  Relying on this premise, Plaintiff asserts that "in arriving at this conclusion that sleep apnea was not severe, the ALJ relied solely on his own assessment of the medical evidence.  Such findings are, accordingly, not supported by substantial evidence."  Id.

The Court disagrees.  To begin with, Dr. Vitelli's report indicates that he was aware of Plaintiff's complaints of fatigue and difficulty sleeping.  (R. at 274-275)  Notwithstanding these complaints, Dr. Vitelli's assessment did not find that they precluded all employment.  (R. at 275)  As for the state agency physicians, the second of these, Amir Missaghian, M.D. ("Dr. Missaghian"), reviewed all available evidence on October 14, 2005, and found that Plaintiff was capable of performing a limited range of sedentary work on a sustained basis.  (R. at 287)  Significantly, at the time Dr. Missaghian reviewed the evidence, the record included updated medical records from the Veterans Administration Medical Center ("VAMC") which had been received on October 4, 2005.  (R. at 71)  The sleep study which diagnosed sleep apnea had been performed more than five months

earlier, on May 2, 2005.  (R. at 356)  To the extent that
Plaintiff contends that the record reviewed by Dr. Missaghian did
not contain the May 2005 diagnosis of sleep apnea, the Court
rejects such contention as implausible given that the doctor's
review included records received from the VAMC on October 4,
2005.  Thus, the ALJ did not rely solely on his own assessment of
the medical evidence in arriving at the conclusion that
Plaintiff's sleep apnea was not severe.  The ALJ's conclusion is
supported by the opinion of Dr. Missaghian and, to extent that
the ALJ was unpersuaded that Plaintiff's sleep apnea existed
prior to January 1, 2005, also by the opinion of Dr. Vitelli.

The ALJ questioned Plaintiff at the hearing about his sleep
apnea and his use of a CPAP machine.  (R. at 49)  As the ALJ
noted, Plaintiff did not indicate that either caused him a
problem.[8]  Although Plaintiff testified that he did not sleep
well at night, (R. at 46), he attributed this to bad dreams which
caused him to wake up, (R. at 53), and not to his sleep apnea or
difficulty using the CPAP machine.  Indeed, in this respect his
testimony is consistent with his statements in the record, both
before and after the diagnosis of sleep apnea, which attribute
poor sleep to bad dreams, stress, and having to use the bathroom.
(R. at 176, 214, 242, 248, 250, 356, 359, 360, 369,[9] 373, 399,
400, 404, 407, 409, 417, 421)

While it is true that step two only requires a "*de minimis,*"
McDonald v. Sec'y of Health & Human Servs., 795 F.2d at 1124,
showing of an impairment, Plaintiff must show more than the mere

---

[8] While the record indicates that Plaintiff had some initial
difficulty using the CPAP machine, (R. at 331, 379), later notes
reflect that he was using the machine with no mention of any
difficulty, (R. at 404, 421).

[9] An April 5, 2005, progress note states in part: "Mr. Bertsch
reports that he has been having better sleep some nights now and is
still having the disturbing dreams as much as before."  (R. at 369)

presence of a condition or an ailment, <u>Hinkle v. Apfel</u>, 132 F.3d 1349, 1352 (10th Cir. 1997); <u>see also Higgs v. Bowen</u>, 880 F.2d 860, 863 (6th Cir. 1988)("The mere diagnosis of [an ailment] says nothing about the severity of the condition."). Here Plaintiff points to the fact that sleep apnea was diagnosed (after his last insured date) and complains that the ALJ should have found it to be a severe impairment. However, there is substantial evidence that Plaintiff's disturbed sleep was largely attributable to causes other than sleep apnea and that those causes were considered by Dr. Vitelli and the state agency physicians in their assessments of Plaintiff's ability to work. The Court is satisfied that the ALJ's finding that Plaintiff's sleep apnea was not a severe impairment during the period under adjudication is supported by substantial evidence and is free of legal error.

## II.  Substantial evidence supports the ALJ's RFC finding.

The ALJ found that Plaintiff had the RFC to perform a wide range of sedentary tasks which required the ability to lift and carry up to 5 pounds frequently and ten pounds occasionally, to sit for at least 6 hours in an 8 hour work day and stand and/or walk for 2 out of 8 hours in an 8 hour work day, and which could be performed with the further non-exertional limitations of the need to avoid pulmonary irritants and exposure to extremes of temperature and humidity and moderate impairment of the ability to maintain attention/concentration and of the ability to deal appropriately with the public, co-workers, and supervisors. (R. at 18) Plaintiff argues that the ALJ's findings regarding fatigue were not supported by any medical source who had seen all the medical records. <u>See</u> Plaintiff's Mem. at 10.

In determining Plaintiff's RFC, the ALJ gave significant probative weight to the opinions of Dr. Vitelli and the state agency physicians because they were consistent with the record as a whole and were not contradicted by a competent, well supported,

functional capacity assessment from a treating source.  (R. at 21)  As previously noted, although Dr. Vitelli could not have known of the sleep apnea diagnosis, he was aware of Plaintiff's complaints regarding difficulty sleeping.  (R. at 274-75)  These complaints remained largely the same both before and after the diagnosis was made.  (R. at 176, 214, 242, 248, 250, 356, 359, 360, 369, 373, 399, 400, 404, 407)  Thus, Dr. Vitelli's opinion regarding Plaintiff's physical abilities was not rendered invalid by the subsequent sleep apnea diagnosis.  In addition, the state agency physicians had the opportunity to review Dr. Vitelli's report as well as the relevant medical records which reflected Plaintiff's complaints regarding difficulty sleeping.  Finally, as explained in previously section, the Court is satisfied that the records reviewed by the second state agency physician, Dr. Missaghian, contain the May 2005 diagnosis of sleep apnea. Plaintiff's contention that the ALJ's findings regarding Plaintiff's fatigue were not supported by any medical source who had seen all of the medical records is, therefore, rejected.

Plaintiff also argues that neither Dr. Vitelli nor the state agency physicians were aware of the side effects of Plaintiff's medications "which only began to be reported in May of 2006." Plaintiff's Mem. at 12.  To the extent that Plaintiff means by this statement that he was experiencing side effects prior to his last insured date of December 31, 2004, but not reporting them to his medical providers, the ALJ was entitled to consider the absence of such complaints in determining Plaintiff's RFC.[10] Moreover, when Plaintiff was evaluated at his attorney's request by Ronald Mark Stewart, M.D. ("Dr. Stewart"), in December of

---

[10] In fact, the ALJ commented upon this circumstance: "Although the claimant asserted that he experienced significant fatigue from his medication, it was apparently not serious enough to be mentioned to any treating (i.e., prescribing) source, as the complaint ... is not documented in the record."  (R. at 20 n.10)

2004, Plaintiff denied that he experienced any side effects from the medications he was taking.[11]  (R. at 159)  Furthermore, it appears that the medications which caused the greatest degree of sleepiness were not commenced until September 2006, more than eighteen months after the expiration of Plaintiff's insured status.  A September 14, 2006, progress note states:

> Mr. Bertsch reports that he is not feeling too well over being informed that he was PPD[12] positive and is now on INH and Pyridoxine for it.  He reports that these medications make him very sleepy in the mornings and he has been feeling very tired in the afternoons also.

(R. at 410)  Thus, the ALJ's finding that Plaintiff did not experience significant fatigue as a result of his medications prior to his last insured date, (R. at 20 n.10), is amply supported by the evidence in the record.

**III.  The ALJ properly evaluated Plaintiff's subjective complaints as required by SSR 96-7p and <u>Avery v. Secretary of Health and Human Services</u>.**

An ALJ is required to investigate "all avenues presented that relate to subjective complaints ...."  <u>Avery v. Sec'y of Health & Human Servs.</u>, 797 F.2d 19, 28 (1st Cir. 1986).  When assessing the credibility of an individual's statements, the ALJ must consider, in addition to the objective medical evidence, the following factors:

1.    The individual's daily activities;
2.    The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3.    Factors that precipitate and aggravate the symptoms;

---

[11] Dr. Stewart's December 22, 2004, report states that Plaintiff's "current medications include Depakote, Seroquel 200 mg. at bedtime and 50 mg. in the morning and evening."  (R. at 156)

[12] PPD is an abbreviation for purified protein derivative (of tuberculin).

4.   The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5.   Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6.   Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7.   Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186 (S.S.A.), at *3; see also Avery, 797 F.2d at 29 (listing factors relevant to symptoms, such as pain, to be considered); 20 C.F.R. § 404.1529(c)(3) (2008) (same).

Here the ALJ specifically listed the Avery factors in his decision.  (R. at 20)  After doing so, the ALJ stated what he considered in determining Plaintiff's RFC since January 17, 2004:

the claimant's allegations in the record and/or testimony that he has experienced shortness of breath which significantly impacted his ability [to] walk even a block or climb stairs, of constant severe back pain despite taking prescribed pain medication and using a TENS and which left him unable to lift or carry more than 5-10 pounds or perform more than minimal amounts of sitting (i.e., 15-30 minutes) or standing (i.e., 15 minutes at a time) as well as depression and difficulty dealing with others or tolerating stress or concentrating/remembering;[] his work activity discussed herein; his treatment history discussed herein; and his described daily activities (e.g., while he claimed he spent significant time alone in his room, the claimant acknowledged living with friends and doing household chores in lieu of rent, doing his laundry, shopping and preparing meals).  Although the Administrative Law Judge realizes that the claimant has experienced some degree of pain, shortness of breath and other symptomatology and functional limitation, applying the standard set forth in 20 CFR 404.1529 and 416.929, SSR's 96-3p and 96-7p and Avery v. Secretary of Health and Human Services, 797 F.2d 19 (1st Cir. 1986), it is not of sufficient severity or credible to the extent to persuade him in particular for

14

> the period since January 17, 2004, that the claimant has
> been incapable of performing work within the limited
> residual functional capacity set forth above.

(R. at 20)(footnote omitted).

Plaintiff contends that the ALJ's credibility findings are cursory and conclusory, that he failed to mention Plaintiff's fatigue or daytime somnolence or the multiple causes thereof, that he failed to mention Plaintiff's allegations of needing to nap during the day, and that he failed to mention his allegations regarding the side effects of his medication. Addressing this last complaint first, Plaintiff is mistaken. As already discussed in the preceding section, the ALJ noted that Plaintiff asserted that he experienced significant fatigue from his medication but failed to report such fatigue to any treating (i.e. prescribing) source.[13] (R. at 20) Also as previously noted, Plaintiff denied suffering any side effects from medication in December 2004 when he was evaluated by Dr. Stewart. (R. at 159) Plaintiff's failure to complain during the relevant time period as well as his denial of side effects in the final month of that time period provide a legitimate basis for the ALJ to discount Plaintiff's testimony as to disabling fatigue resulting from the side effects of medications.

The Court finds that, contrary to Plaintiff's contention, the ALJ addressed Plaintiff's complaint of significant fatigue, (R. at 20 n.10), and explained why he found that complaint not entirely credible, (id.). It also bears noting that medical

---

[13] It is true that beginning in April of 2006 Plaintiff at times complained of side effects from his medications, (R. at 401, 403, 405), and that in September of 2006 he indicated that the new medications which he had recently started were making him "very sleepy in the mornings and he ha[d] been feeling very tired in the afternoons also." (R. at 410) However, these complaints were voiced long after Plaintiff's insured status had expired, and there is no evidence in the record that Plaintiff reported any side effects from medications prior to the expiration of his insured status.

sources repeatedly described Plaintiff as being "alert" and not "drowsy," (R. at 161, 169, 177, 193, 207, 216, 244, 250, 321, 333, 338, 359, 371, 380, 385, 388, 391, 408, 412); see also (R. at 275)(finding Plaintiff on examination "alert"), and that no treating physician opined that Plaintiff had significant functional limitations as a result of side effects, cf. Burns v. Barnhart, 312 F.3d 113, 131 (3rd Cir. 2002)("Drowsiness often accompanies the taking of medication, and it should not be viewed as disabling unless the record references serious functional limitations.").

The Court disagrees that the ALJ's credibility findings were cursory.  In addition to the fact that Plaintiff failed to complain about side effects during the relevant period (and, in fact, denied experiencing any side effects, (R. at 159)), it can be inferred from the ALJ's reference to Plaintiff's "treatment history," (R. at 20), that he considered the fact that although Plaintiff complained of breathing difficulties, (R. at 119), pulmonary function tests revealed only mild restrictions, (R. at 278, 599).  It can similarly be inferred that the ALJ also considered that Plaintiff was consistently assigned GAF[14] scores which revealed only mild to moderate symptoms.  (R. at 162, 163, 170, 178, 208, 217, 241, 245, 322, 334, 339, 372, 381, 386, 389, 392, 400, 402, 406, 409, 423, 578)  Yet, Plaintiff testified to being unwilling to go into stores, (R. at 51), and isolating himself in his room, (R. at 52).

As part of his credibility assessment, the ALJ also

---

[14] The Global Assessment of Functioning ("GAF") "is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'"  Langley v. Barnhart, 373 F.3d 1116, 1123 n.3 (10th Cir. 2004)(quoting Diagnostic and Statistical Manual of Mental Disorders (4th ed. Text Revision) ("DSM-IV-TR") at 32).  The GAF "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."  DSM-IV-TR at 34.

considered the fact that Plaintiff performed household chores.
(R. at 20)  Plaintiff testified that he did the dishes, cleaned
the floors, and vacuumed, (R. at 44), that he prepared meals, (R.
at 49), and that he also did his own laundry, (id.).  While
Plaintiff testified that he took breaks while performing these
tasks, (R. at 48-49), the ALJ could reasonably consider the fact
that Plaintiff performed these chores in lieu of paying rent, a
circumstance which certainly suggests that Plaintiff's functional
capabilities were not as limited as he claimed, (id.).  In fact,
Plaintiff testified that not only did he not pay rent or pay for
food as a result of performing chores, (R. at 43-44), but the
friends with whom he resided either paid for or bought him
cigarettes because of his performance of household tasks,[15] (R.
at 47).   The ALJ was not bound to accept Plaintiff's testimony
regarding his daily activities unquestioningly.  Cf. Rogers v.
Barnhart, 204 F.Supp.2d 885, 887, 894-95 (W.D.N.C. 2002)(finding
that ALJ properly discredited plaintiff's subjective complaints

---

[15] Although Plaintiff told the ALJ at the January 16, 2007,
hearing that he only smoked "[a]bout a pack [a day], little less," (R.
at 47), on previous occasions he admitted to a much higher rate of
consumption: on May 5, 1999, three packs per day for 26 years, (R. at
462); on October 19, 2005, two packs per day, (R. at 384); on November
22, 2005, (same), (R. at 387); on March 7, 2006, "up to 3 ppd now,"
(R. at 399); on August 2, 2006, "[s]mokes 1.5 ppd of cigarettes," (R.
at 407); on September 14, 2006, "2 ppd, went up to 3 a day after
finding out about the Tb," (R. at 410).
     Plaintiff also told the ALJ that he "used to drink a lot," (R. at
48), but now he drank "[m]aybe one beer in six months," (id.), and
that the last time he had had a beer was "probably back in July, last
year [2007]," (id.).  Yet, only a week earlier, Plaintiff told a
treating source that he "drinks beer occasionally," (R. at 421), and
that he does "not go overboard," (id.).  Similarly, Plaintiff told the
ALJ that he had "abused cocaine, heroin and marijuana," (R. at 47),
but that the last time he had used any of these drugs was "[b]ack in
'98, '99 would be the last time I used it," (id.)  However, on May 29,
2002, he told VA medical personnel that his last cocaine use was "9
months ago," (R. at 532), and that his last cannabis use was "three
months ago," (id.).  Given these contradictions, there was ample basis
in the record for the ALJ to find Plaintiff to be less than fully
credible.

17

of pain based in part on her daily activities even though
Plaintiff claimed she needed a cane to ambulate and only engaged
in brief doses of cooking and dusting furniture).

Plaintiff testified that at the January 16, 2007, hearing
that he did not do food shopping, (R. at 49), but this was at
odds with his February 15, 2005, Function Report in which he
stated that he shopped for food weekly, (R. at 119).  While this
conflict could be attributable to a worsening of Plaintiff's
condition, the fact remains that shortly after Plaintiff's last
insured date he was still able to shop weekly.  In addition, it
also bears noting that while Plaintiff testified that he sat in
the car while his girlfriend shops, (R. at 51), he indicated that
this was because he did not like being around people, (R. at 52),
and not because of any physical inability to accompany her inside
the stores, (id.).

The ALJ's credibility finding is generally entitled to
deference.  Frustaglia v. Sec'y of Health & Human Servs., 829
F.2d 192, 195 (1st Cir. 1987)("The credibility determination by
the ALJ, who observed the claimant, evaluated his demeanor, and
considered how that testimony fit in with the rest of the
evidence, is entitled to deference, especially when supported by
specific findings.")(citing DaRosa v. Sec'y of Health & Human
Servs., 803 F.2d 24, 26 (1st Cir. 1986)); see also Yongo v. INS,
355 F.3d 27, 32 (1st Cir. 2004)("[T]he ALJ, like any fact-finder
who hears the witnesses, gets a lot of deference on credibility
judgments."); Suarez v. Sec'y of Health & Human Servs., 740 F.2d
1 (1st Cir. 1984)(stating that ALJ is "empowered to make
credibility determinations ...").  The Court finds that the ALJ's
evaluation of Plaintiff's subjective complaints complies with SSR
96-7p and with the requirements of Avery v. Secretary of Health
and Human Services.  The Court further finds that the ALJ's
credibility findings are adequate and that they are supported by

18

substantial evidence.   Accordingly, Plaintiff's third argument is rejected.

Finally, the Court is compelled to observe that although Plaintiff has been diagnosed with COPD, he has continued to smoke cigarettes.   The record is replete with entries reflecting that Plaintiff was repeatedly and strongly advised to stop smoking.[16] See e.g., (R. at 163, 239, 251, 322, 326, 340, 344, 373, 381, 386, 389, 392, 402, 406, 409, 413, 457, 571, 578, 587, 590, 598) "If a claimant does not follow prescribed treatment 'without a good reason,' he or she will not be found to be disabled." Tsarelka v. Sec'y of Health & Human Servs., 842 F.2d 529, 534 (1st Cir. 1988)(quoting 20 C.F.R. §§ 404.1530(b), 416.930(b) (2008)); see also Mouser v. Astrue, 545 F.3d 634, 638 (8th Cir. 2008) (holding that continued smoking amounts to a failure to follow a prescribed course of remedial treatment where "[m]edical records reflect that smoking likely caused [plaintiff]'s COPD"); Dumas v. Schweiker, 712 F.2d 1545, 1553 (2nd Cir. 1983)(affirming denial of benefits where claimant failed to heed doctor's diet recommendation which would have helped hypertension and headaches); Warren v. Astrue, No. 4:06cv00041JWC, 2008 WL 895704, at *4 (E.D. Ark. Mar. 28, 2008)(affirming denial of DIB and SSI where plaintiff, who alleged disability due to COPD, chronic bronchitis, and asthma, failed to stop smoking despite being told many times to do so); cf. Badgley v. Astrue, No. 1:07CV163 LMB, 2009 WL 799601, at *13 (E.D. Mo. Mar. 24, 2009)(finding that "the ALJ properly found that plaintiff's failure to quit smoking detracted from her credibility" where she claimed to be disabled

---

[16] A June 16, 2005, Veterans Administration Medical Center progress note states: "Tobacco abuse: spent a good deal of time discussing the importance of quitting."   (R. at 344)   The same note also reflects that "Pt also complained of SOB [shortness of breath] with moderate activity and that he is unable to do things he wishes because of his breathing," (id.).

based on, inter alia, COPD and bronchitis and doctor stated that the only therapy for plaintiff's lung disease was to quit smoking).

### Conclusion

The ALJ's determination that Plaintiff was not disabled within the meaning of the Act, as amended, is supported by substantial evidence in the record and is free of legal error.  I therefore recommend that Defendant's Motion to Affirm be granted and that Plaintiff's Motion to Reverse be denied.

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt.  See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
May 22, 2009